IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TONY SANTIAGO MARTINEZ                                                                    PLAINTIFF

V.                                    CASE NO. 5:24-CV-5078

JORDAN JACOBS                                                                              DEFENDANT

## OPINION AND ORDER

Before the Court is the Report and Recommendation ("R&R") (Doc. 72) of the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas, filed in this case on September 11, 2025. The R&R recommends denying the parties' cross-motions for summary judgment. Defendant, Officer Jordan Jacobs, filed Objections (Doc. 72) to the R&R. As required by 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the record *de novo* as to all proposed findings and recommendations to which Mr. Jacobs has raised objections.

## I. BACKGROUND

This case concerns the use of a police dog during Mr. Martinez's arrest which Mr. Martinez alleges constituted excessive force in violation of the Fourth Amendment. (Doc. 55). On August 31, 2022, the Springdale Police Department responded to a domestic disturbance involving Mr. Martinez. (Doc. 70, ¶¶ 6–7). Officer Jacobs, who is a canine handler, arrived on scene a little after 8 PM alongside his police dog, and was told by officers already on the scene that Mr. Martinez had a firearm, had charges for domestic assault second degree, and had fled to the west side of the house. *Id*. ¶ 7. Officer Jacobs and others conducted a search, and found Mr. Martinez in a wooded area, lying in tall grass and brush. *Id*. ¶¶ 10–14. After encountering Mr. Martinez, Officer Jacobs issued

1

four warnings to Mr. Martinez, but ultimately deployed the dog. Mr. Martinez claims that at this time, he was unarmed, not resisting arrest, and not attempting to flee. (Doc. 55, ¶¶ 8–13). Mr. Martinez claims that as a result of Officer Jacobs's K9 use, he has undergone multiple surgical procedures to regain limited use of his arm (where he was bitten), is in constant and severe pain, and that he suffered a psychological injury because of the attack. *Id*. ¶ 15. The incident was captured via body camera footage provided to the Court. *See* Doc. 58-2 & Doc. 62-10.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On such a motion, the Court reviews the facts in the light most favorable to the opposing party and gives that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

If the moving party meets its burden, the non-moving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  The non-moving party must instead produce sufficient evidence "such that a reasonable jury could return a verdict" in their favor.  *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby*, 477 U.S. at 248).

### III.  OBJECTIONS

Officer Jacobs's objections are somewhat scattered across his brief, and so the Court groups them below for purposes of analysis. The thrust of his objections fall into two categories: (1) Judge Comstock erred in her analysis of the facts and misapplied the law with respect to what constitutes an adequate warning; and (2) the threat to officer safety was so significant that a warning was unnecessary, and that the Court should conclude so as a matter of law.

### A. Adequate Warning

Officer Jacobs points out that neither party disputes that he warned Mr. Martinez four times before he released the K9, and argues that because neither *Kuha* nor *Adams* define the amount of time that officers are required to wait between giving a warning and using K9 in order to be "adequate," Judge Comstock's recommendation was contrary to law.  *See Kuha v. City of Minnetonka*, 365 F.3d 590 (8th Cir. 2003); *Adams v. City of Cedar Rapids*, 74 F.4th 935 (8th Cir. 2023).  Officer Jacobs's argument appears to be predicated on the belief that, after *Adams*, the "adequacy" of a warning is a question of law for the Court to decide in the first instance.  The Court disagrees.  As the R&R notes, *Adams* held that as early as August 2020, it was clearly established that an officer is "required to provide an adequate warning when searching with his police dog trained to bite and hold." 74 F.4th at 939.  Contrary to Officer Jacobs's suggestion, however, *Adams*

3

did not hold that whether a given period was "adequate" is a matter of law, but the opposite: the court affirmed the district court's ruling that the "adequacy of the canine warnings . . . was a question of fact to be determined by a jury." *Id*.

Officer Jacobs also argues that because *Adams* does not define the precise amount of time an officer must wait after issuing a warning, he is entitled to qualified immunity because the right he allegedly violated was not clearly established at the time of the incident. This again misreads *Adams*. Although *Adams* was decided a year after the facts giving rise to this case, the incident giving rise to *Adams* occurred in 2020, and the court found that it was clearly established that an officer is "required to provide an adequate warning" as of at least that time. *Id.* at 937. If it was clearly established in 2020 that an officer must provide adequate warning before using a K9, it must have also been clearly established two years later when Officer Jacobs let his dog loose on Mr. Martinez. While Officer Jacobs correctly asserts that neither *Adams* nor any other Eighth Circuit case defines the number of seconds an officer must wait for a warning to be considered adequate, that is precisely the point: *Adams* found there is no objective standard, and for that reason the question must be submitted to a jury.

Finally, the Court also agrees with Judge Comstock's assessment of the video evidence. From the Court's viewing of the footage, Mr. Martinez attempts to comply with the officer's orders by raising at least one arm into the air immediately after Officer Jacobs instructs him to "show [him] [his] hands or [he's] going to get bit." *See* Doc. 58, Ex. 2 at 15:57. Officer Jacobs then gives a contradictory (or at least supplemental) order to "get up or you're going to get bit." While the footage itself is poorly lit and shaky—another consideration that weighs against judicial factfinding—a reasonable jury could find it

supports Mr. Martinez's story. Further, although Officer Jacobs asserts that it is "undisputed that Plaintiff was unconscious when the four warnings were given," and so Judge Comstock clearly erred in finding that the video shows that Mr. Martinez moved to attempt to comply with Officer Jacobs's instructions, Mr. Martinez most certainly did not concede this point.[1] Judge Comstock's finding that Mr. Martinez began moving in an attempt to comply with Officer Jacobs's instructions is not clearly erroneous, and the jury may consider his reactions in the video when deciding whether Officer Jacobs's use of force was reasonable.[2]

### B. Whether a Warning Was Necessary

Last, Officer Jacobs appears to argue that this is the rare case where providing Mr. Martinez an opportunity to surrender would have posed an unacceptable risk to his safety, so he is entitled to qualified immunity as a matter of law regardless of the adequacy of his warning. Officer Jacobs is correct that even in cases where an officer's actions do not satisfy the warning requirement, that failure may be excused where there is significant risk to officer safety. *Adams*, 74 F.4th at 740. But *Adams* instructs that while there may be "rare" or "exceptional" cases where that might occur, the jury is best positioned to make

---

[1] In support, Officer Jacobs cites Mr. Martinez's statement of facts, which states that "Officer Jacobs did not know if Mr. Martinez was conscious or unconscious when he instructed Mr. Martinez to show his hands." (Doc. 58 ¶ 19). Surely counsel can spot the difference between: (1) Mr. Martinez stating that Officer Jacobs did not know whether or not Mr. Martinez was conscious; and (2) Mr. Martinez stating that he himself was unconscious. Counsel is reminded of their duty of candor to the Court and cautioned against being so careless.

[2] Officer Jacobs also argues that Judge Comstock failed to accurately assess whether the use of force was reasonable from the perspective of an officer in the moment. But the "reasonableness" of using a K9 without "first giving the suspect a warning and opportunity for peaceful surrender" is exactly what *Kuha* and *Adams* address.

5

that determination. *Id.* Although *Adams* did leave open that there might be "rare" circumstances where the "threat to officer safety is so obvious that it becomes a legal question," this case, like *Adams*, is "not one of them." *Id*.

In *Adams*, the defendant officer had reason to believe that the plaintiff (a suspect who was apprehended by a police K9 without a warning) was "armed and may have just committed a burglary." *Id.* Nevertheless, the court concluded that the case was not one in which "the threat to officer safety is so obvious that it becomes a legal question." *Id.* While Officer Jacobs attempts to distinguish *Adams* by noting that in this case, he issued a warning, whether a warning was given is immaterial to the threat he was facing at the time he decided to issue the warning. Indeed, a jury might conclude that Officer Jacobs's ability and choice to issue four separate warnings indicated that he did not believe the circumstances were so threatening that he could not wait for Mr. Martinez to comply before unleashing the dog. The cases are largely analogous notwithstanding the warning, and the Court thus concludes that this question must be submitted to the jury too.

Accordingly, all of Officer Jacobs's objections are **OVERRULED.**

## IV.  CONCLUSION

Having overruled all pending objections, the R&R (Doc. 71) is **ADOPTED IN ITS ENTIRETY**.

**IT IS THEREFORE ORDERED** that Mr. Martinez's Motion for Summary Judgment (Doc. 57) and Officer Jacobs's Motion for Summary Judgment (Doc. 60) are **DENIED.** This matter will be set for trial by separate order.

**IT IS SO ORDERED** on this 9th day of February, 2026.

                                                                _____
                                                                TIMOTHY L. BROOKS
                                                                CHIEF UNITED STATES DISTRICT JUDGE